IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

THOMAS E. O'NEAL                        )
and LINDA C. O'NEAL,                    )
                                        )
                Plaintiffs,             )        TC-MD 150423D
                                        )
        v.                              )
                                        )
DEPARTMENT OF REVENUE,                  )
State of Oregon,                        )
                                        )
                Defendant.              )        **FINAL DECISION**[1]

Plaintiffs appeal Defendant's Notice of Deficiency Assessment dated June 16, 2015, for

the 2011 tax year. A trial was held in the courtroom of the Oregon Tax Court on January 26,

2016, in Salem, Oregon. Joseph J. Minniti (Minniti) appeared and testified on behalf of

Plaintiffs. Jesse Mecham appeared and testified on behalf of Defendant. Exhibits 1 through 17

were received from Plaintiffs without objection. Exhibits A through F were received from

Defendant without objection.

## I. STATEMENT OF FACTS

Minniti testified that he is a Certified Public Accountant and prepared Plaintiffs' 2011

income tax returns. Minniti testified that Plaintiff, Thomas O'Neal (O'Neal), was a merchant

marine in 2011, working as a refrigerator engineer, who was assigned work for various

employers by the Marine Firemen's Union Pacific District (Union) located in Seattle,

Washington.

/ / /

---

[1] This Final Decision incorporates without change the court's Decision, entered June 15, 2016. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

On their 2011 tax return, Plaintiffs claimed a number of deductions that were denied by Defendant. Plaintiffs claimed a deduction in the amount of $155 for #466 Red Wing men's boots that O'Neal purchased on January 29, 2011, and actually used, while working on ships. (Ptfs' Ex 1.3.) Union rules state: "It is the responsibility of all hands to ensure their footwear is appropriate to their work area and job/task requirements. It is recommended that personnel wear safety shoes that are in good condition and have non-slip soles." (Ptfs' Ex 3 at 2.) The rules also state:

> "When the vessel is transiting in heavy weather conditions, the master (at his/her discretion) shall secure the main deck to all personnel. If it becomes necessary for personnel to access the decks for any reason, they shall obtain the master's permission. The master shall ensure that personnel are equipped with appropriate safety gear including but not limited to * * * slip resistant footwear."

(*Id*.) Minniti testified that the boots were necessary for O'Neal's safety and were not appropriate for use outside of work because they were exposed to salt water and grease. Defendant denied the deduction for the boots in part, because the employer "recommended" but did not "require" the boots, and in part because the boots were suitable for everyday wear.

O'Neal claimed a deduction for business related travel for two trips from his home, in Portland, Oregon, to Seattle, Washington, for a physical examination and a "fit for duty" physical. Minniti testified that under the Union contract, O'Neal was required to have the physical examinations in one of the Union locations in Los Angeles, San Francisco, Seattle, or Honolulu. Minniti testified that O'Neal traveled a total of 800 miles from his home to Seattle for the physicals and, using the federal rate of $0.51 per mile, claimed a total of $408 in travel miles. Defendant denied the travel miles on the basis that these trips represented personal commuting miles or, in the alternative, might have been deducted as medical expense in Schedule A if he had met the 7.5 percent limitation threshold.

Plaintiffs claimed a deduction for travel and lodging expenses for a last minute job assignment in New York. Minniti testified that, normally, it was O'Neal's responsibility to get to the ship, however, in October 2011, he was called for an assignment at the last minute and the employer paid for his transportation from Seattle, the location of the Union assignment hall, to New York. Plaintiff claimed as a deduction certain expenses as incidental to that trip, including $68 for an Amtrak trip from Portland to Seattle and a $60 airline luggage fee that was not paid for by the employer. Minniti also testified that O'Neal estimated he spent $55 for a hotel in Seattle before his flight to New York and $70 for cab fare, for which Plaintiffs do not have receipts. The total deductions claimed for that trip were $253. Defendant disallowed the train trip and luggage fee as commuting expenses, and denied the cab fare and hotel fee deductions due to a lack of substantiation.

Plaintiffs claimed $7,869 in travel related expenses for hotels and meals while his ship was docked at various ports around the world. Minniti testified that O'Neal would have been allowed to sleep and eat on the ship while docked, but that O'Neal went ashore and stayed at hotels and eat meals while there. Minniti testified that O'Neal told him the ships were cold and uncomfortable and the food was of poor quality and, thus, O'Neal was justified in staying off the boat pursuant to the "sleep and rest rule." Plaintiffs did not submit receipts for lodging or meal expenses and, instead, relied on the federal Meals and Incidental Expenses (M&IE) rates as a basis for their deductions. Defendant asserts that because the employer provided lodging and meals on the ship, O'Neal was not entitled to deduct those expenses. Defendant further asserts that Plaintiffs did not substantiate the lodging expenses.

/ / /

/ / /

## II. ANALYSIS

A.  *Burden of Proof*

In analyzing Oregon income tax cases the court starts with several general guidelines. First, the court is guided by the intent of the legislature to make Oregon's personal income tax law identical in effect to the federal Internal Revenue Code (IRC) for the purpose of determining taxable income of individuals, wherever possible.  ORS 316.007.[2]  Second, in cases before the Tax Court, the party seeking affirmative relief bears the burden of proof and must establish his or her case by a "preponderance of the evidence."  ORS 305.427.  Third, allowable deductions from taxable income are a "matter of legislative grace" and the burden of proof (substantiation) is placed on the individual claiming the deduction.  *INDOPCO, Inc. v. Commissioner*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992).

The legal authority for the disputed deductions begins in IRC section 162(a), which provides in relevant part:

> "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including –
> * * * * *
> (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business[.]"

For a deduction to be allowed as a business expense, it must be both ordinary and necessary to a taxpayer's trade or business.  IRC § 162(a).  The Oregon Tax Court has stated that "an ordinary expense is one which is customary or usual.  This does not mean customary or usual within the taxpayer's experience but rather in the experience of a particular trade, industry or

/ / /

---

[2] The court's references to the Oregon Revised Statutes (ORS) are to 2011.

community." *Roelli v. Dept. of Rev.*, 10 OTR 256, 258 (1986) (citing *Welch v. Helvering*, 290 US 111, 54 S Ct 8, 78 L Ed 212 (1933)).

IRC section 262 generally disallows deductions for "personal, living, or family expenses" not otherwise expressly provided for in the IRC. This court has recognized that "[t]he purpose of IRC section 162(a)(2) is to ameliorate the effects of business which requires taxpayers to duplicate personal living expenses," and that "[c]onsequently, courts must determine whether the claimed expense is actually required by the business rather than by the taxpayer's personal choice." *Harding v. Dept. of Rev.(Harding)*, 13 OTR 454, 458 (1996).

B.     *Deduction for clothing*

For work clothes to be deductible as ordinary and necessary business expenses under section 162, they must be (1) required or essential in the taxpayer's employment, (2) not suitable for general or personal wear, and (3) not actually worn for general or personal wear. *Hynes v. Comm'r,* 74 TC 1266, 1290 (1980).

Plaintiffs seek to deduct the costs of #466 Red Wing Men's 6-inch boots that they purchased on January 29, 2011. Defendant argues that the boots were only "recommended" and not "required" by the employer and therefore the boots are not deductible. On that point, Plaintiffs have a better argument because the need for nonslip footwear on a transportation ship would be essential to safe working conditions. The second and third parts of the test are more problematic. Plaintiffs presented only Minniti's hearsay testimony that the boots would be unsuitable for general use because of exposure to salt water and grease. In *Drill v. Comm'r (Drill)*, 8 TC 902 (1947), the court denied a clothing deduction, holding that they were "adaptable to general wear" despite being soiled with plaster, cement, mud, and grease at work. *Id*. at 903. In this case, Minniti's testimony was not sufficient to show that the conditions faced

by O'Neal made the boots unsuitable for general use any more than those of the taxpayer in *Drill*. Additionally, no testimony was presented to show that O'Neal did not actually wear the boots for general or personal wear. Plaintiffs have failed to meet their burden of proof that the boots are ordinary and necessary business expenses as opposed to nondeductible personal items. Thus, the deduction is not allowed.

C.      *Deduction for Business Travel*

Plaintiffs assert that travel from O'Neal's home in Oregon to a medical facility in Seattle, once for an annual physical and once for a "fit for duty" physical, are deductible as business travel. Defendant argues the mileage was a nondeductible commuting expense, citing *Anderson v. Comm'r (Anderson)*, 60 TC 834 (1973), or, in the alternative, the mileage was deductible as personal medical expenses subject to threshold limitations.

In *Anderson*, the taxpayer deducted travel expenses for appearing at a union hall to obtain assignments. The court held that travel expenses in going to the union hall were nondeductible personal commuting miles. In contrast to the facts in *Anderson*, O'Neal was not traveling to a union hall for work, but rather, to a doctor's office to obtain medical certifications required by the employer. O'Neal was required by his Union to possess an annual physical card from "an SIU Pacific District Seafarers' Medical Center" and a "fit for duty" certification prior to a job assignment. (Ptf's Ex 5-7.) The travel did not represent personal commuting miles.

Defendant's alternate theory is that the medical deduction expenses were personal in nature and might have been deducted as a medical expense in Schedule A, subject to the 7.5 percent limitation. However, the court finds the expenses were not related to personal medical care for O'Neal's benefit, but, rather, were an employer requirement. IRS publication 529 states "[y]ou may be able to deduct the following items as unreimbursed employee expenses * * *

Medical examinations required by an employer." IRS Pub 529 (2011). Because those expenses can be deducted, travel expenses related to obtaining employer required medical certifications are deductible. Consequently, Plaintiffs' deductions for travel to obtain medical certifications are allowed.

D.      *Deductions for Travel to New York*

Plaintiffs seek to deduct the following amounts for travel related to a work assignment in New York: Amtrak train ticket from Portland to Seattle, $68; airline luggage fee for a flight between Seattle and New York, $60; hotel stay in Seattle, $55; cab fare, $70. Minniti testified that O'Neal incurred those travel expenses when he was given a job assignment at the last minute, and although the employer paid for O'Neal's flight from Seattle to New York, related expenses were not reimbursed. Minniti testified that Plaintiffs have no receipts but used federal per diem rates for the hotel and estimated the cab cost. IRS Pub 463 contains a specific warning: "There is no optional standard lodging amount similar to the standard meal allowance. Your allowable lodging expense deduction is your *actual cost*." (Emphasis added.) IRC section 274(d) provides that no deduction is allowable under section 162 for any traveling expenses unless the taxpayer complies with strict substantiation rules. IRC § 274(d)(1), (4). A taxpayer must substantiate the amount, time, place, and business purpose of the expenses by adequate records or by sufficient evidence corroborating his or her own statement. IRC § 274(d)(4); Treas Reg § 1.274–5T(b)(2), (c) (2010); *Duncan v. Comm'r*, 80 TCM (CCH) 283 (2000), 2000 WL 1204820 at *3 (US Tax Ct) (finding that no deduction was allowed where taxpayer failed to substantiate the amount of lodging expenses incurred).

Under Internal Revenue Code (IRC) § 162, a taxpayer may deduct "such traveling expenses [that] are reasonable and necessary in the conduct of the taxpayer's business and

directly attributable to it * * *." Treas Reg § 1.162-2(a). Generally, a taxpayer may not deduct daily transportation expenses, commonly referred to as commuting expenses, incurred in going between the taxpayer's residence and their regular place of business or employment. Treas Reg § 1.262-1(b)(5); *see also* §1.162-2(e). That rule is based on the premise that "* * * where a taxpayer chooses to live is a personal decision. The distance a taxpayer chooses to live from [their] place of business does not change the character of the expense." *Harding,* 13 OTR at 458; *see also, Comm'r v. Flowers*, 326 US 465, 473, 66 S Ct 250, 90 L Ed 203 (1946) (stating that "whether [taxpayer] traveled three blocks or three hundred miles to work, the nature of [the] expenditures remained the same").

O'Neal traveled from Portland to Seattle because that is the location of his regular work assignments from the Union and the location where the employer scheduled his flight departure. Because Seattle was his starting work location, the train travel represented a commuting expense, not a business expense. The airline luggage fee was incurred transporting O'Neal's personal belongings to a job site and is similarly a commuting expense.

Plaintiffs did not provide receipts for the hotel in Seattle or the cab fare. Because those items require strict proof, or substantiation, the deductions must be denied under IRC section 274(d).

E.    *Deductions for Per Diem Lodging and Meals.*

Generally, the IRC allows taxpayers to use the "standard meal allowance" method as an alternative to the actual cost method. IRS Pub 463 (2011). The amount allowed varies based on where and when the travel occurs. When using that method, the taxpayer must still substantiate the time, place, and business purpose of the travel. Taxpayers often assert that they do not need documentation to prove their lodging expense. Although an employer can reimburse an

employee tax-free for qualified lodging at per diem rates, for an employee or self-employed individual, only actual expenses are allowed for lodging. Further, the substantiation rules of IRC section 274(d) apply.

The parties agreed that O'Neal could have remained aboard ship, while docked in various ports of call, and have access to free food and lodging. Plaintiffs argue that under the "sleep and rest rules" O'Neal was not required to stay aboard ship due to uncomfortable conditions. As to the claim for lodging, as explained above, Plaintiffs were required to provide evidence of their lodging expense and cannot rely on per diem rates. Plaintiffs have not provided lodging receipts and therefore their deduction must be denied without further analysis pursuant to IRC section 274(d).

A concise history of the "sleep or rest rule" is contained in the case *Bissonnette v. Comm'r*, 127 TC 124 (2006). In deciding when meals and lodging are a deductible business expense, courts look to whether the taxpayer was "away from home" for such a period to require sleep or rest, and if so, the expenses are potentially deductible. The rule does not stand for the proposition, as Plaintiffs argue, that deductibility depends on the quality of the food and the comfort of the lodging provided to the employee. The court understands that O'Neal may have needed some time away from the ship after long voyages. Nevertheless, the time away and expenses for food represent personal choices made by O'Neal. As such, those expenses are not deductible.

### III. CONCLUSION

After careful review and consideration of the evidence presented, the court finds that Plaintiffs are not allowed a deduction for boots, meals, or lodging. The court finds that

/ / /

FINAL DECISION  TC-MD 150423D
9

Plaintiffs' travel expenses related to obtaining health certifications required by the employer are allowed as an unreimbursed business expense deduction in the sum of $408. Now, therefore,

IT IS THE DECISION OF THIS COURT that, for the 2011 tax year, Plaintiffs' deduction for clothing is disallowed.

IT IS FURTHER DECIDED that, for the 2011 tax year, Plaintiffs' deductions for meals, lodging, baggage fees, and taxi fees are disallowed.

IT IS FURTHER DECIDED that, for the 2011 tax year, Plaintiffs' deductions for travel related to obtaining health certifications required by the employer are allowed in the amount of $408.

Dated this ____ day of July, 2016.

_____
RICHARD DAVIS
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of the Final Decision or this Final Decision cannot be changed. TCR-MD 19 B.*

*This document was filed and entered on July 7, 2016.*